# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2674

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota |
| Martin Floyd Benning, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 12, 2000

Filed: April 27, 2001

_____

Before McMILLIAN and JOHN R. GIBSON, Circuit Judges, and LAUGHREY,[1]
District, Judge.

_____

McMILLIAN, Circuit Judge.

Martin Floyd Benning appeals from a final judgment entered in the United States
District Court[2] for the District of South Dakota, upon his conditional guilty plea to two
counts of receipt and possession of a firearm by a prohibited person, in violation of 18

_____

[1]The Honorable Nanette K. Laughrey, United States District Court Judge for the
Western District of Missouri, sitting by designation.

[2]The Honorable Lawrence L. Piersol, Chief Judge, United States District Court
for the District of South Dakota.

U.S.C. § 922(g)(1). For reversal, Benning argues that the district court erred in granting the government's motion in limine prohibiting him from presenting a defense of entrapment by estoppel at his trial because he legitimately relied upon the wording of an ATF form and his parole certificate of discharge, which restored "full rights of citizenship," to conclude that he was not a prohibited person. For the reasons discussed below, we affirm the decision of the district court.

## Jurisdiction

Jurisdiction in the district court was proper based upon 18 U.S.C. § 3231. Jurisdiction on appeal is proper based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(b).

## Background

In 1983, Benning pled guilty to first degree burglary in Sioux Falls, South Dakota and was sentenced to a 10-year prison term. He was paroled in 1987. Upon his release from parole in 1989, Benning received a Certificate of Discharge ("Certificate") from the State of South Dakota, which restored his "full rights of citizenship subject to the provisions of SDCL [South Dakota Codified Laws] 22-14-15." SDCL 22-14-15 provides that anyone convicted of a crime of violence may not possess or control a firearm for 15 years following discharge from parole. SDCL 22-1-2(9) defines "crime of violence" to include first degree burglary.

On July 30, 1998, Benning bought a rifle from Scheel's Sporting Goods in Sioux Falls. On October 9, 1998, Benning bought another gun, a semi-automatic rifle, from K-mart in Sioux Falls. On each occasion, Benning filled out and signed a Bureau of Alcohol, Tobacco and Firearms ("ATF") Form 4473. The ATF form contained the question: "Have you been convicted in any court of a crime for which the judge could have imprisoned you for more than one year, even if the judge actually gave you a shorter sentence?" Benning answered "no" to the question on each ATF form.

Benning subsequently pawned both guns. When he tried to redeem one of the guns on January 29, 1999, the National Instant Check System (NICS), which had been instituted after Benning originally purchased the guns, triggered a response that he was possibly a prohibited person. As a result, the pawn shop refused to return the gun to Benning and the ATF received a NICS referral, which prompted an investigation of Benning in May 1999. On February 11, 1999, Benning's wife redeemed the gun after signing a statement that she knew that her husband was a prohibited person and that it would be a violation of law for her to deliver the gun to him. On February 17, 1999, Benning returned to the pawn shop and pawned the same gun. As a result of their investigation, the ATF discovered Benning's illegal purchase of the two guns, and questioned him. Benning waived his rights and told the investigators that he believed he was able to possess the firearms because his rights had been fully restored.

Benning was indicted on June 18, 1999, for two counts of receipt and possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1),[3] with trial scheduled for January 25, 2000. Prior to trial, Benning submitted proposed jury instructions on the defenses of good faith and entrapment by estoppel. Benning argued that it was unfair to prosecute him for exercising a privilege the government told him was available. Benning claimed that ATF Form 4473, particularly the sections entitled "Important Notice 5 and EXCEPTION" and "Important Notice 3 and EXCEPTION"

---

[3]18 U.S.C. § 922(g)(1) states in pertinent part:

It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

("the exceptions"),[4] served as an affirmative and misleading statement from the ATF, which he reasonably relied upon when incorrectly filling out the form. The government responded by filing a motion in limine to prohibit Benning's proposed defenses, arguing that they were irrelevant to the "knowing possession" element of the crime charged.

At a hearing on the matter, the district court prohibited Benning from presenting a good faith defense because, as a general intent crime, Benning only needed to have knowledge of the possession of the gun itself, not knowledge of the law regarding gun possession. Hearing & Plea Transcript, No. CR 99-40140 at 5 (Jan. 25, 2000); see also United States v. Dockter, 58 F.3d 1284, 1288 (8th Cir. 1995). The district court also ruled that Benning did not establish the elements of the defense of entrapment by estoppel. Hearing & Plea Transcript at 6-7. Consequently, the district court granted the government's motion in limine and indicated it would not provide the jury with Benning's entrapment and good faith defense proposed instructions. Benning entered a conditional guilty plea, reserving the right to appeal the district court's decision to prohibit the proposed entrapment by estoppel defense. See Fed. R. Crim. P. 11(a)(2).

---

[4]The Notice 5 exception reads:

EXCEPTION: For one who has been convicted of a crime for which the judge could have imprisoned the individual for more than one year, or has been convicted of a misdemeanor crime of domestic violence, the prohibition does not apply if, under the law where the conviction occurred, the individual has been pardoned for the crime, or the conviction has been expunged or set aside, or the person has had civil rights restored, AND the person is not prohibited by the law of the jurisdiction where the conviction occurred from receiving or possessing firearms. Persons subject to one of these exceptions should answer "NO" to questions 9c or 9k as applicable.

The Notice 3 exception includes the same language but applies to different spaces on the ATF form.

On June 26, 2000, he was sentenced to 30 months imprisonment, 3 years supervised release on each count to run concurrently, and a $200 special assessment. This appeal followed.

## Discussion

We review the district court's denial of the defense of entrapment by estoppel *de novo*, because it is a question of law. See United States v. Santiago-Godinez, 12 F.3d 722, 726 (7th Cir. 1993) ("The legal sufficiency of a proffered defense is a question of law and therefore is reviewed *de novo*."); see also Presley v. United States, 851 F.2d 1052 (8th Cir. 1988) (interpreting application of federal firearms statutes as a matter of law); United States v. Dockter, 58 F.3d at 1288 (interpreting § 922(g) as a question of law). While a defendant in a criminal case is generally entitled to an instruction on his defense theory of the case, the district court may deny the instruction if it does not correctly state the law. United States v. Prieskorn, 658 F.2d 631, 636 (8th Cir. 1981). To the extent that the district court's legal conclusion regarding whether Benning's defense theory accurately reflected the law was based on factual findings, we review for clear error. United States v. Woods, 213 F.3d 1021, 1022 (8th Cir. 2000) (reviewing district court's factual finding for clear error, while reviewing legal conclusions based upon those facts *de novo*).

Benning claims that the district court erred in refusing to allow his defense of entrapment by estoppel because he reasonably believed he could legally possess a firearm based on: (1) the language of the Certificate restoring his civil rights, combined with (2) the language of the exceptions to ATF Form 4473 instructing him how to fill out the application for gun ownership. To successfully present a defense of entrapment by estoppel, Benning bears the burden of proof to demonstrate that: (1) his reliance on the government's statement was reasonable, and (2) the statement misled him into believing his conduct was legal. United States v. Austin, 915 F.2d 363, 366 (8th Cir. 1990). The defense of entrapment by estoppel only applies "when an official assures

a defendant that certain conduct is legal, and the defendant reasonably relies on that advice and continues or initiates the conduct." United States v. Achter, 52 F.3d 753, 755 (8th Cir. 1995). However, a government official must be guilty of affirmative misconduct in order for a defendant to put forth a viable defense of entrapment by estoppel. United States v. Bazargan, 992 F.2d 844, 849 (8th Cir. 1993); United States v. LaChapelle, 969 F.2d 632, 637 (8th Cir. 1992).

The Certificate informed Benning that his "full rights of citizenship" were restored, "subject to the provisions of SDCL 22-14-15." Benning claims that the Certificate acted as an affirmative statement from a government agency, the South Dakota Department of Corrections, informing him that his full rights of citizenship, including gun ownership, were restored. We rely upon state law to define what constitutes a prior conviction for purposes of applying federal firearms statutes, including the effect of the restoration of civil rights following incarceration. 18 U.S.C. § 921(a)(20); see United States v. Wind, 986 F.2d 1248, 1250 (8th Cir. 1993) (citing United States v. Edwards, 946 F.2d 1347, 1349 (8th Cir. 1991)). However, in order to hold that an individual is a prohibited person for purposes of firearms possession and thus criminally responsible for violation of the federal firearms statutes, we require a state to expressly exclude the possession of firearms from the restoration of civil rights. 18 U.S.C. § 921(a)(20); see Wind, 986 F.2d at 1250.

In the present case, Benning contends that the Certificate failed to expressly exclude possession of firearms from the restoration of civil rights because it referred to a statute, SDCL 22-14-15, which required another statute, SDCL 22-1-2(9), and independent legal research to define it. See Minneapolis Steel & Machinery Co. v. Federal Surety Co., 34 F.2d 270, 274 (8th Cir. 1929) (relying on "express" to mean a direct statement, not an inference or an implication). We disagree.

The language of the Certificate expressly notified Benning that the restoration of his civil rights was "subject to the provisions of SDCL 22-14-15," which prohibits

a person convicted of a crime of violence, including first degree burglary, from possessing or controlling a firearm for a period of 15 years following release from parole. We cannot ignore the plain language of SCDL 22-14-15, which indicates that Benning, as a person convicted of a crime of violence, is not eligible to possess a firearm. See United States v. Vig, 167 F.3d 443, 447 (8th Cir. 1999) (interpreting a statute using the commonsense meaning of the words). It was Benning's obligation to discover and understand the limitation set forth in SDCL 22-14-15. As a result, we hold that no government official, through the language of the Certificate, misrepresented the status of Benning's restoration of his civil rights. It was not reasonable for Benning to rely on the Certificate alone without knowing what the limits of SDCL 22-14-15 were.

Benning claims that he was further misled by the language of the exceptions in the ATF form, which he reasonably relied upon before filling out ATF Form 4473 to obtain his firearms. Again, there was no affirmative misconduct by a government official in the wording of the exceptions. There is no evidence that a government official ever informed Benning that he could legally own or possess a firearm. At most, Benning suffered from a lack of explanation rather than an affirmative misleading interpretation of the statute. See United States v. Long, 977 F.2d 1264, 1271 (8th Cir. 1992) (holding that the defense of entrapment by estoppel does not apply when no one, including any government official, ever told the defendant that a privilege was available to him). It is reasonable for a convicted felon to question his ability to possess a firearm, and to investigate any confusing language more thoroughly. We hold it unreasonable for Benning to rely upon the wording of the exceptions in the ATF form as a basis for his proposed entrapment by estoppel defense.

In addition, Benning's assertion of reasonable reliance is belied by the fact that even after he was informed of his status as a prohibited person, exposing any alleged misunderstanding, he continued to pursue his illegal firearm possession by acquiring the gun from the pawnshop through his wife.

We therefore agree with the district court that Benning failed to establish the necessary elements of the defense of entrapment by estoppel. We hold that there was no affirmative statement by a government official, either regarding the Certificate or the exceptions in the ATF form, which warranted a defense of entrapment by estoppel. Furthermore, we hold that Benning's reliance on those sources were unreasonable. As a result, we affirm the district court's decision to prohibit Benning from presenting the defense of entrapment by estoppel.

Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.