§ 77-6203(5)(b) does not violate either article VIII, § 4, or article III, § 18. Accordingly, we reverse the judgment of the district court and remand the cause with directions to dismiss.

Reversed and remanded with directions.

McCormack, J., participating on briefs.

Wright, J., not participating.

———————————

State of Nebraska, appellee and cross-appellant, v. John Blake Edwards, appellant and cross-appellee.

___ N.W.2d ___

Filed August 2, 2013.    No. S-12-777.

1. **Jury Instructions: Judgments: Appeal and Error.** Whether jury instructions given by a trial court are correct is a question of law. When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.

2. **Prosecuting Attorneys: Appeal and Error.** A motion for the appointment of a special prosecutor is addressed to the discretion of the trial court, and absent an abuse of discretion, a ruling on such a motion will not be disturbed on appeal.

3. **Appeal and Error.** Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.

4. **Jury Instructions.** Jury instructions are not prejudicial if they, when taken as a whole, correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence.

5. **Criminal Law: Proof.** The State carries the burden to prove all elements of the crime charged.

6. **Jury Instructions.** An instruction which withdraws from the jury an essential element in the case is prejudicial.

7. **Double Jeopardy: Evidence: New Trial: Appeal and Error.** The Double Jeopardy Clause does not forbid a retrial so long as the sum of all the evidence admitted by a trial court would have been sufficient to sustain a guilty verdict.

8. **Appeal and Error.** An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings.

9. **Criminal Law: Entrapment: Estoppel.** The elements of the defense of entrapment by estoppel are (1) that the defendant must have acted in good faith before

taking any action; (2) that an authorized government official, acting with actual or apparent authority and who had been made aware of all relevant historical facts, affirmatively told the defendant that his conduct was legal; (3) that the defendant actually relied on the statements of the government official; and (4) that such reliance was reasonable.

10. **Trial: Evidence: Proof.** The nature of an affirmative defense is such that the defendant has the initial burden of going forward with evidence of the defense. When the defendant has produced sufficient evidence to raise the defense, the issue is then one which the State must disprove.

Appeal from the District Court for Keith County: James E. Doyle IV, Judge. Reversed and remanded for a new trial.

Clarence E. Mock, Denise E. Frost, and Matt M. Munderloh, of Johnson & Mock, for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Stephan, J.

As the Keith County Attorney, John Blake Edwards established a pretrial diversion program. After an audit by Nebraska's state auditor and an investigation by the Nebraska State Patrol, Edwards was charged with three counts of theft by unlawful taking for checks written from diversion program funds. Edwards was acquitted by a jury of two of the theft counts and convicted of the third, which was based on a check he wrote on a diversion program account to a local trapshooting team (trap team). He was sentenced to probation. Edwards appeals. We find plain error in the jury instructions, and therefore, we reverse, and remand for a new trial.

## I. FACTS AND PROCEDURAL BACKGROUND

Edwards took office as the Keith County Attorney in January 2007. He established a pretrial diversion program, which allowed for dismissal of criminal charges after the offender completed program requirements, such as community service or alcohol education. Participants paid an enrollment fee and

court costs and entered into a contract with the county attorney's office. The diversion program was initially approved by the Keith County Board of Commissioners on March 7, 2007, with the understanding that the program would be self-funded.

The fees and costs paid by program participants were deposited into a separate bank account in the name of the diversion program, with Edwards as the only authorized signer on the account. Edwards spent $7,257.11 from the diversion program bank account on supplies for the diversion program between March 7, 2007, and August 13, 2008.

In April 2008, a Keith County commissioner submitted a complaint to the Nebraska Attorney General's office, expressing concern that the diversion program did not have formal approval of the county board and that public funds were being misused. The complaint stated that the program funds were kept in an account available only to Edwards rather than being remitted to the county treasurer. Edwards submitted a response in which he explained that all financial records were kept on the program's computer by his staff and that all deposits and dispersals had been recorded and cross-checked by two employees other than Edwards.

In the spring of 2008, after the commissioner's complaint had been filed, Edwards attended a seminar for county attorneys in Kearney, Nebraska. At the seminar, Edwards had a conversation with John Freudenberg, chief of the criminal division of the Nebraska Attorney General's office. The two men later disagreed as to the substance of the conversation. According to Edwards, Freudenberg motioned for Edwards to come talk to him and then said, "Don't worry about the letter that you've received." Edwards thought Freudenberg was referring to the commissioner's complaint. Edwards testified that Freudenberg told him that he could use the diversion program funds to pay salaries, to supplement employees, or for donations. He further testified that Freudenberg advised him that diversion program funds could be given to employees without being based on the hours they worked.

In contrast, Freudenberg testified that Edwards approached him during a break between sessions of the seminar and that the two discussed the county commissioner's complaint.

Freudenberg told Edwards that if he were a county attorney, he probably would not have a diversion program. Freudenberg denied telling Edwards that he could use diversion funds to pay employees or to make donations. In fact, Freudenberg said they did not discuss the use of diversion program funds, because that was not the nature of the complaint from the county commissioner.

In June 2008, the Attorney General's office informed the county commissioner that it found no basis for involvement by the Attorney General and recommended that the matter be considered by the county board. At its meeting on August 13, 2008, the county board passed a resolution adopting a revised diversion program. An agreement was attached to the resolution. It specifically provided that all program participant fees and costs were to be deposited with the county treasurer. In addition, the county attorney was to maintain a checking account for payment of court costs for diversion participants. Any surplus funds after program costs were paid were to be made available for public projects related to education and prevention of criminal activity, as approved by the board. The board did not give Edwards any direction as to the use of the previous diversion program's checking account.

On January 20, 2009, Edwards wrote a check on the account of the previous diversion program to a local trap team in the amount of $3,681.09. This check was the basis of the theft charge on which he was convicted. The trap team is a program for junior and senior high trapshooters. Edwards testified that the trap team is a nonprofit organization affiliated with a local sports club which is also a nonprofit organization. However, an investigator for the Nebraska Department of Revenue testified that there was no record with the Secretary of State or the Internal Revenue Service that the trap team was a nonprofit organization. Edwards volunteered with the trap team, assisting with legal work, coaching, and fundraising. He was an authorized signer on the team's checking account. On January 20, a check for $981.03 drawn on the account of the trap team was written to Edwards and signed by Edwards and his wife. The memorandum line indicated "knives, shells 09 season reimb."

In April or May 2010, the state auditor's office notified Keith County it would conduct an audit of the county, including the county attorney's office. The audit was conducted in July, and a report was issued in September. The audit found that Edwards had been paid $7,257.11 in excess of the amount the board authorized for his salary. It also found that payments of $18,989.04 had been made from the previous diversion program without board approval. Edwards explained that he had been unable to locate the receipt folder for the diversion account. He also stated that various payments made to him were not salary but were for reimbursement for items purchased for the office, both for the diversion program and for general office use.

After the auditor's report was released, the Attorney General's office referred the matter to the Nebraska State Patrol for an investigation. Freudenberg was initially assigned to monitor the investigation. But after the State Patrol investigator notified Freudenberg of Edwards' claim that Freudenberg had given Edwards permission to make a donation to the trap team, Freudenberg removed himself from the case because he was a potential witness.

Edwards was charged on September 19, 2011, with three counts of theft by unlawful taking, two counts of income tax evasion, and three counts of filing a false income tax return. After a preliminary hearing, the Keith County Court found that the State had not met its burden of proof on the charges of income tax evasion and filing a false income tax return, and those counts were dismissed. Edwards entered a not guilty plea to the theft charges. The first two were based on checks Edwards wrote on the diversion program account to his wife for her work for the program. They totaled $2,850. The third theft charge was based on the check written to the trap team.

The jury found Edwards guilty on the third theft charge. He was acquitted of the other two charges. Edwards' motion for a new trial was overruled.

Edwards was sentenced to 36 months of community-based intervention probation, to include intensive supervision probation as set forth in Neb. Rev. Stat. § 29-2262.04 (Reissue

2008). He filed this timely appeal. The State filed a cross-appeal, asserting that the sentence is excessively lenient.

## II. ASSIGNMENTS OF ERROR

Edwards assigns the following errors: The trial court erred in (1) giving an "entrapment by estoppel" instruction that erroneously allocated the burden of proof to Edwards, (2) allowing the trial court clerk to divide the jury panel into two groups for jury selection, (3) failing to disqualify the Attorney General's office from prosecuting Edwards, (4) refusing to allow testimony from members of the county board regarding use of pretrial diversion funds, (5) refusing to allow Edwards to introduce evidence about the working structures of other diversion programs, (6) admitting evidence of joint income tax returns filed by Edwards and his wife, and (7) failing to give the jury a limiting instruction about the admissible purpose of the income tax returns. Edwards also asserts that his trial counsel provided ineffective assistance of counsel by failing to object to the "entrapment by estoppel" instruction and by failing to follow the specific procedure outlined in Neb. Rev. Stat. § 25-1637 (Reissue 2008) to quash the jury panel.

In a cross-appeal, the State assigns that the trial court abused its discretion in imposing an excessively lenient sentence.

## III. STANDARD OF REVIEW

[1] Whether jury instructions given by a trial court are correct is a question of law.[1] When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.[2]

[2] A motion for the appointment of a special prosecutor is addressed to the discretion of the trial court, and absent an abuse of discretion, a ruling on such a motion will not be disturbed on appeal.[3]

---

[1] *State v. Merchant*, 285 Neb. 456, 827 N.W.2d 473 (2013).

[2] *Id*.

[3] *State v. Kinkennon*, 275 Neb. 570, 747 N.W.2d 437 (2008).

## IV. ANALYSIS

### 1. JURY INSTRUCTIONS

Edwards assigns error to the trial court's instruction No. 4, dealing with his affirmative defense of "entrapment by estoppel." Edwards claims the instruction erroneously allocated the burden of proof to him. The instruction listed the elements of the defense and stated: "The defendant must prove all of the elements of the defense by the greater weight of the evidence." It also included the following paragraph:

> C. Effect of Findings
>
> If you find the defendant proved each of the foregoing elements of the defense by the greater weight of the evidence, then you must find him not guilty of Count III, theft by unlawful taking, and complete the appropriate verdict form. If you find the defendant did not prove each of the foregoing elements of the defense by the greater weight of the evidence, then you must find him guilty of Count III, theft by unlawful taking, and complete the appropriate verdict form.

At oral argument, counsel for the State candidly advised this court that the last sentence of paragraph C quoted above was problematic because it could be understood to remove the burden of proving Edwards' guilt from the State and impermissibly require Edwards to prove his innocence. Counsel suggested that the instruction may constitute plain error.

[3,4] Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.[4] Jury instructions are not prejudicial if they, when taken as a whole, correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence.[5]

We note that instruction No. 3 correctly instructed the jury on the elements of the offense of theft by unlawful taking as

---

[4] *State v. Watt*, 285 Neb. 647, ___ N.W.2d ___ (2013).

[5] See *State v. Miller*, 281 Neb. 343, 798 N.W.2d 827 (2011).

charged in count III of the information. It stated: "The State has the burden of proving beyond a reasonable doubt each one of the foregoing elements necessary for conviction, and this burden never shifts." Thus, there is no doubt that the jury was correctly instructed that the State had the burden to prove Edwards guilty of the charged offense beyond a reasonable doubt. But the last sentence of instruction No. 4 states a contrary and incorrect proposition that if Edwards did not prove his affirmative defense, the jury was required to find him guilty.

We considered a similarly conflicting jury instruction in *State v. Abram*.[6] In that case, a written jury instruction contained the following sentence: "'The fact that the Defendant did not testify must be considered by you as an admission of guilt and must not influence your verdict in any way.'"[7] Due to a typographical error, the word "not," which should have preceded the word "be," was omitted from the instruction. There was no objection to the instruction. When the court read the instruction aloud to the jury, the court correctly stated that the defendant's failure to testify "'must not be considered'" as an admission of guilt.[8] We concluded that the incorrect written instruction constituted plain error requiring reversal.[9] We reasoned that in light of the Sixth Amendment issue at stake, "the risk that the jury at a minimum was confused by the instruction and at worst thought it was required to consider [the defendant] as having admitted guilt prevents us from concluding that the error was harmless."[10]

[5,6] We reach the same conclusion here. The error in instruction No. 4 implicates both the presumption of innocence and the State's burden to prove guilt beyond a reasonable doubt. The State carries the burden to prove all elements of the

---

[6] *State v. Abram*, 284 Neb. 55, 815 N.W.2d 897 (2012).

[7] *Id*. at 60, 815 N.W.2d at 903 (emphasis omitted).

[8] *Id*. at 67-68, 815 N.W.2d at 907 (emphasis omitted).

[9] *State v. Abram, supra* note 6.

[10] *Id*. at 70, 815 N.W.2d at 909.

crime charged.[11] An instruction which withdraws from the jury an essential element in the case is prejudicial.[12] When read in conjunction with instruction No. 3, which defined the elements of the crime of theft by unlawful taking which the State had the burden to prove, the jury could easily have been confused as to which elements must be proved and which party had the burden of proof. At worst, the jury could have concluded that if Edwards failed to prove his affirmative defense, it was required to find him guilty. We conclude that the last sentence of instruction No. 4 resulted in plain error which necessitates reversal.

[7] Having found reversible error, we must determine whether the Double Jeopardy Clause bars a second trial. The Double Jeopardy Clause does not forbid a retrial so long as the sum of all the evidence admitted by a trial court would have been sufficient to sustain a guilty verdict.[13] We conclude that the totality of the evidence admitted by the trial court was sufficient to sustain Edwards' conviction on count III. Thus, double jeopardy does not preclude a remand for retrial on that count only.

## 2. Issues Likely to Recur

[8] An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings.[14] We conclude that the issues raised in this appeal regarding the affirmative defense of entrapment by estoppel and the disqualification of the Attorney General's office are likely to recur on remand, and we therefore address them here.

---

[11] *State v. Magallanes*, 284 Neb. 871, 824 N.W.2d 696 (2012).

[12] See, *State v. Merchant, supra* note 1; *State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012).

[13] *State v. Merchant, supra* note 1; *State v. Payne-McCoy*, 284 Neb. 302, 818 N.W.2d 608 (2012).

[14] *State v. Smith, supra* note 12.

(a) Entrapment by Estoppel

This court has not ruled definitively on the availability of the affirmative defense of entrapment by estoppel in criminal cases. In *State v. LeDent*,[15] we noted that our law on this point is "not crystallized" and we found it unnecessary to achieve greater clarity in that case. We do so now.

The defense has been recognized by a number of federal and state jurisdictions.[16] It is rooted in the Due Process Clause of the Fifth Amendment, as interpreted by the U.S. Supreme Court in *Raley v. Ohio*[17] and *Cox v. Louisiana*.[18] In *Raley*, the defendants were convicted of contempt for refusal to testify before a state commission. They had invoked their privilege against self-incrimination as guaranteed by the state constitution after being specifically advised by members of the commission that they had a right to do so. That advisement was incorrect because a state immunity statute deprived them of the protection of the privilege. The Court held that a state court's affirmance of the convictions violated due process and that permitting the convictions to stand "would be to sanction the most indefensible sort of entrapment by the State—convicting

---

[15] *State v. LeDent*, 185 Neb. 380, 383, 176 N.W.2d 21, 23 (1970).

[16] See, e.g., *U.S. v. Hale*, 685 F.3d 522 (5th Cir. 2012); *U.S. v. Bader*, 678 F.3d 858 (10th Cir. 2012); *U.S. v. Theunick*, 651 F.3d 578 (6th Cir. 2011); *U.S. v. Schafer*, 625 F.3d 629 (9th Cir. 2010); *U.S. v. Kieffer*, 621 F.3d 825 (8th Cir. 2010); *U.S. v. Giffen*, 473 F.3d 30 (2d Cir. 2006); *U.S. v. Sousa*, 468 F.3d 42 (1st Cir. 2006); *U.S. v. Marshall*, 332 F.3d 254 (4th Cir. 2003); *U.S. v. Pitt*, 193 F.3d 751 (3d Cir. 1999); *U.S. v. Funches*, 135 F.3d 1405 (11th Cir. 1998); *U.S. v. Howell*, 37 F.3d 1197 (7th Cir. 1994); *U.S. v. Levin*, 973 F.2d 463 (6th Cir. 1992); *U.S. v. Austin*, 915 F.2d 363 (8th Cir. 1990); *People v. Bradley*, 208 Cal. App. 4th 64, 145 Cal. Rptr. 3d 67 (2012); *State v. Barr*, 721 S.E.2d 395 (N.C. App. 2012); *People v. Stephens*, 34 Misc. 3d 43, 937 N.Y.S.2d 822 (2011); *Com. v. Cosentino*, 850 A.2d 58 (Pa. Commw. 2004); *State v. Krzeszowski*, 106 Wash. App. 638, 24 P.3d 485 (2001); *State v. Guzman*, 89 Haw. 27, 968 P.2d 194 (1998); *Miller v. Com.*, 25 Va. App. 727, 492 S.E.2d 482 (1997); *Commonwealth v. Twitchell*, 416 Mass. 114, 617 N.E.2d 609 (1993).

[17] *Raley v. Ohio*, 360 U.S. 423, 79 S. Ct. 1257, 3 L. Ed. 2d 1344 (1959).

[18] *Cox v. Louisiana*, 379 U.S. 559, 85 S. Ct. 476, 13 L. Ed. 2d 487 (1965).

a citizen for exercising a privilege which the State clearly had told him was available to him."[19]

In *Cox*, the Court reversed the Louisiana Supreme Court's affirmance of convictions for violation of a state statute which prohibited picketing "'in or near'" a courthouse.[20] The defendant was part of a group that had been picketing across the street from a courthouse. Police officials had told the defendant he must confine the demonstration to that area. Concluding that these circumstances were similar to those in *Raley*, the Court concluded: "The Due Process Clause does not permit convictions to be obtained under such circumstances."[21]

[9] Given the constitutional roots of the entrapment by estoppel defense, we conclude that it should be recognized in this state. In this case, paragraph A of instruction No. 4 listed the elements of the defense. The jury was instructed (1) that the defendant must have acted in good faith before taking any action; (2) that an authorized government official, acting with actual or apparent authority and who had been made aware of all relevant historical facts, affirmatively told the defendant that his conduct was legal; (3) that the defendant actually relied on the statements of the government official; and (4) that such reliance was reasonable. Although jurisdictions have formulated the elements of the entrapment by estoppel defense in various ways, we agree that the instruction as given accurately states the essential elements of the defense.[22]

[10] The trial court instructed the jury that "[t]he defendant must prove all of the elements of the defense by the greater weight of the evidence." Some courts have held that the defendant bears the burden of proving the defense.[23] But, in the absence of a statute placing the burden of proving an

---

[19] *Raley v. Ohio, supra* note 17, 360 U.S. at 438.

[20] *Cox v. Louisiana, supra* note 18, 379 U.S. at 560.

[21] *Id.*, 379 U.S. at 571.

[22] See, e.g., *U.S. v. Bader, supra* note 16; *U.S. v. Theunick, supra* note 16; *U.S. v. Howell, supra* note 16; *U.S. v. Levin, supra* note 16; *State v. Guzman, supra* note 16; *Miller v. Com., supra* note 16.

[23] See, e.g, *U.S. v. Theunick, supra* note 16; *U.S. v. Austin, supra* note 16.

affirmative defense on the defendant in a criminal case,[24] we have held that the nature of an affirmative defense is such that the defendant has the initial burden of going forward with evidence of the defense.[25] When the defendant has produced sufficient evidence to raise the defense, the issue is then one which the State must disprove.[26] We conclude that this is the appropriate burden of proof for the entrapment by estoppel defense.

### (b) Disqualification of Attorney
### General's Office

Edwards also assigned as error the trial court's failure to disqualify the Nebraska Attorney General's office from prosecuting him. Edwards filed a motion seeking disqualification of the Attorney General's office and appointment of a special prosecutor because there was a possibility that Freudenberg would be called as a witness. The trial court overruled Edwards' motion but disqualified Freudenberg from appearing as an advocate in the case.

A motion for the appointment of a special prosecutor is addressed to the discretion of the trial court, and absent an abuse of discretion, a ruling on such a motion will not be disturbed on appeal.[27] In *State v. Kinkennon*,[28] the defendant sought a special prosecutor after an attorney who worked in the same firm as his defense counsel began working for the county attorney's office. We declined to adopt a per se rule that would require disqualification of an entire prosecuting office based on the mere appearance of impropriety. Instead, we agreed with other courts which had established a procedure whereby the trial court evaluates the circumstances of a particular case and then determines whether disqualification of the entire office is

---

[24] See, e.g., Neb. Rev. Stat. §§ 28-202 (Reissue 2008) and 29-2203 (Cum. Supp. 2012).

[25] *State v. Kinser*, 252 Neb. 600, 567 N.W.2d 287 (1997).

[26] *Id.*

[27] *State v. Kinkennon, supra* note 3.

[28] *Id.*

appropriate. Courts take into consideration whether the attorney in question divulged any confidential information to other prosecutors or participated in some way in the prosecution of the defendant. We stated that disqualification is not required if an attorney is "effectively isolated from any participation or discussion of matters" related to the case.[29]

This court recognized in *Kinkennon* that "complete disqualification of a prosecutor's office may be warranted in cases where the appearance of unfairness or impropriety is so great that the public trust and confidence in our judicial system simply could not be maintained otherwise."[30] However, "when the disqualified attorney is effectively screened from any participation in the prosecution of the defendant, the prosecutor's office may, in general, proceed with the prosecution."[31]

In the case at bar, the concern was not whether Freudenberg had shared confidences with the attorneys prosecuting the case, but, rather, whether Freudenberg would serve dual roles as an attorney for the State and as a witness. As noted, the trial court disqualified Freudenberg from involvement in the case as an advocate for the prosecution. Freudenberg was called as a witness only after Edwards had related his version of the conversation between himself and Freudenberg. The record does not support a finding that the trial court abused its discretion in failing to appoint a special prosecutor.

## V. CONCLUSION

For the reasons discussed, we reverse Edwards' conviction on one count of theft by unlawful taking and remand the cause for a new trial on that count only. Because the conviction must be reversed, the State's cross-appeal need not be addressed.

REVERSED AND REMANDED FOR A NEW TRIAL.

---

[29] *Id*. at 576, 747 N.W.2d at 443.

[30] *Id*. at 578, 747 N.W.2d at 444.

[31] *Id*.